0629

John R. CORLEY, Jr., and Jewel C. York, Respondents v. Ben LOOPER, John E. Reynolds, and Martha M. Reynolds, Appellants.

(340 S. E. (2d) 556)

Court of Appeals

---

*Kenneth D. Acker*, of *Acker, Acker, Floyd and Welmaker*, Pickens, *for appellants*.

*R. Murray Hughes*, Pickens, *for respondents*.

Heard Dec. 16, 1985.

Decided Feb. 10, 1986.

CURETON, Judge:

In this action the respondents John R. Corley and Jewel C. York (respondents) seek damages and injunctive relief preventing appellants Ben Looper, John E. Reynolds and Martha M. Reynolds (appellants) from crossing a small triangular tract of property of which the respondents claim ownership. The case was referred to a special referee who found that the tract of land was not owned by the respondents. The respondents appealed the referee's decision

to the circuit court. The circuit court refused to adopt the findings of the special referee and held that the respondents owned the tract. This appeal followed. We affirm.

The appellants own 19.2 acres of land in Pickens County while the respondents are absentee owners of a nearby tract containing 97.7 acres. This dispute centers around the location of the eastern boundary of the respondents' property and the western boundary of the appellants' property. At one time the properties of all of the parties were owned by W. R. McJunkin. In 1956, he retained a surveyor who prepared a plat of a tract and conveyed the tract to respondents' predecessors in title, the Bramletts. The description in the deed contained a magnetic bearing of South 30 degrees East which marked the eastern boundary in question. In 1967 Bramlett subdivided the tract and deeded 97.7 acres of the tract to the respondents. The deed referred to the boundary line as having a bearing of South 10 degrees 45 minutes West.

In 1970 McJunkin sold the westernmost part of a piece of property called the Anthony tract to appellant Looper. The deed conveying this property described its western boundary line as having a magnetic bearing of North 10 degrees 45 minutes East.[1] Looper subsequently conveyed a four acre portion of his land to the Reynolds.

The appellants contend that the surveyor who prepared the 1956 plat made an error in describing the eastern boundary line of the Bramlett tract as having a bearing of South 30 degrees East. Instead, they claim the call should have been South 30 degrees West. Accordingly, they assert that a triangular tract of land is located between the parties' properties which McJunkin never conveyed to anyone. Ownership of this small tract is critical because it contains the driveway over which the Reynolds travel to enter property on which they have built a home.

In this action the parties seek both legal and equitable relief. When this occurs, characterization of the action as legal or equitable depends upon the main purpose of the suit which is generally determined from the body of the complaint. *Johnson v. South Carolina National*

---

[1] The bearings of South 10 degrees 45 minutes West and North 10 degrees 45 minutes East are the same.

*Bank,* 285 S. C. 80, 82, 328 S. E. (2d) 75, 77 (1985); *Insurance Financial Services, Inc. v. South Carolina Insurance Co.,* 271 S. C. 289, 293, 247 S. E. (2d) 315, 318 (1978). A review of the evidence makes it clear that the respondents' primary purpose in bringing this suit was to determine title to the disputed tract of land. We hold that this action is in the nature of a trespass action to try title.[2]

A suit in the nature of "trespass to try title," is an action at law. *Ward v. Woodward,* 338 S. E. (2d) 347 (S. C. Ct. App. 1985). *See Bell v. South Carolina Public Service Authority,* 277 S. C. 556, 291 S. E. (2d) 196 (1976) (boundary line dispute is an action at law). In an action at law tried with a reference, the trial judge's findings of fact are equivalent to a jury's findings. *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 86, 221 S. E. (2d) 773 (1976). Thus, our review of the trial judge's order is limited to a determination of whether there is any evidence to support his findings.

## I.

We have reviewed the evidence in this rather difficult and confusing record and find evidentiary support for both the findings of the special referee and the circuit court.[3] In support of the referee's findings there are physical markings on the ground evidencing a boundary line along the South 30 degrees West bearing. Additionally, witnesses testified that McJunkin, who is now deceased, visually pointed out to them that the property line was located generally where claimed by appellants. Moreover, a surveyor testified that the South 30 degrees East bearing does not permit a closure of property lines on the 1956 plat and a correction of the bearing to South 30 degrees West would permit or almost permit a closure.

On the other hand, there is also support for the circuit court's findings. All of the parties to this action received their properties by deeds that described the boundary in

---

[2] We note that while the respondents' complaint requested injunctive relief, the trial judge granted none and the respondents do not object to his failure to grant the relief.

[3] The record is difficult to follow because no effort was made to purge it of irrelevant testimony. Also, many of the exhibits referred to by witnesses have not been made part of the record on appeal.

question as continuing a bearing of South 10 degrees 45 minutes West or the reverse bearing of North 10 degrees 45 minutes East. Additionally, respondent Corley testified that McJunkin pointed out to him on the ground that the boundary line ran generally along the North 10 degrees 45 minutes bearing. Also witnesses testified that a boundary line along the South 10 degrees 45 minutes West bearing was clearly marked on the ground by a white oak at one end and a stone at the other. All of the parties agree that the white oak marks one end of the boundary line in question and that the stone (known as the Scurlock Stone) is either an intermediate marking on a boundary line that runs generally perpendicular to the disputed boundary line or is the other end of the boundary line.

Additionally, in further support of his holding, the trial judge found that there was no evidence in the record to support the conclusion that McJunkin intended to reserve the small triangular tract of land "apparently inaccessible to [him] after his conveyance to Looper." We agree. The deed from McJunkin to Looper describes the lands on the west as "formerly owned by Bramlett" and further states that the land conveyed is all of the remaining property owned by him of the "Old Anthony property". Moreover, in the absence of express provisions in a deed, there is a rebuttable presumption against a grantor's retaining a tract of land that is of no practical value to him. *Ward v. Woodward*, 338 S. E. (2d) 347 (S. C. Ct. App. 1985). Finding ample evidentiary support for the trial judge's findings regarding the location of the boundary line, we affirm his holding.

## II.

Finally, the appellants contend that even if the respondents are found to be owners of the triangular tract, they should be estopped to deny that the appellants have a right to cross the tract to enter their properties. Their contention is premised upon the assertion that the respondents knew that the driveway had been constructed across the tract and used by the appellants for several years, yet did nothing about it prior to the institution of this suit. The special referee agreed, but the trial

judge disagreed finding that there was no evidence in the record that the respondents had any knowledge of the existence of the road until just prior to the institution of this suit.

We are of the opinion that the doctrine of equitable estoppel is not available to the appellants. As stated in the case of *Frady v. Smith*, 247 S. C. 353, 147 S. E. (2d) 412, 415 (1966), the elements of equitable estoppel are:

> The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct (sic) which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack (sic) of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

We are unable to glean from the record any evidence which shows the appellants either relied on any representations, acts, or silence of the respondents, or were led in any way to change their position to their prejudice.

Accordingly, the order of the trial judge is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.